LOUISE W. FLANAGAN, United States District Judge
This matter is before the court on the Memorandum and Recommendation ("M & R") of United States Magistrate Judge Robert B. Jones, Jr., regarding defendant's motion (DE 20) to dismiss indictment. No objections to the M & R have been filed, and the time within which to make any objection has expired. This matter is ripe for ruling.
The district court reviews de novo those portions of a magistrate judge's M & R to which specific objections are filed. 28 U.S.C. § 636(b). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M & R. Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). In this case, the magistrate judge correctly determined that dismissal was not warranted due to lack of subject matter jurisdiction or 8 U.S.C. § 1326(d). See United States v. Mendoza-Lopez, 481 U.S. 828, 834, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987) ; Sorcia v. Holder, 643 F.3d 117, 119 n.1 (4th Cir. 2011).
Accordingly, upon careful review of the M & R and of the record generally, having found no clear error, the court hereby ADOPTS the recommendation of the magistrate judge as its own, and, for the reasons stated therein, defendant's motion to dismiss is DENIED.
SO ORDERED this the 5th day of February, 2019.
MEMORANDUM AND RECOMMENDATION
Robert B. Jones, Jr., United States Magistrate Judge
This matter is before the court on the motion by Defendant Jose Dolores Hernandez-Aguilar ("Defendant") to dismiss the indictment against him. [DE-20]. The Government responded in opposition to Defendant's motion. [DE-24]. Accordingly, the matter is ripe for review. For the reasons stated below, it is recommended that Defendant's motion be denied.
I. BACKGROUND
According to the government, Defendant initially entered the United States in 1989 and became a lawful permanent resident in 2000. Gov't's Resp. [DE-24] at 1. On September 19, 2002, Defendant was convicted in the United States District Court for the Southern District of Texas of transporting undocumented aliens by use of a vehicle for financial gain in violation of 8 U.S.C. § 1324. Id. Defendant's conviction violated the terms of his permanent residency status subjecting him to removal proceedings. Id. ; Ex. [DE-24-1] at 3. As part of Defendant's immigration proceedings pursuant to the Immigration and Nationality Act following his conviction, on July 22, 2003, Defendant was served a notice to appear ("NTA") at a removal hearing. Ex. 1 [DE-24-1] at 1. According to the NTA, Defendant was a citizen of Mexico, his immigration status had been adjusted to a lawful permanent resident after entering the United States and he had been convicted in the United States District Court for transporting undocumented aliens within the United States. [DE-20-1] at 4. The *335 NTA provided further that Defendant was to appear before an immigration judge in San Antonio, Texas "on a date to be set" and "at a time to be set." Ex. 1 [DE-24-1] at 1. The NTA did not indicate the date or time of the removal hearing. Defendant signed the NTA and requested an immediate removal hearing and waived his right to have a ten-day period in which to secure counsel. Id. at 2. Defendant remained in custody until the hearing pursuant to a July 3, 2003 custody determination. Ex. 2 [DE-24-2]. Defendant appeared at the removal hearing on August 14, 2003 before an immigration judge in Laredo, Texas. Id. ; Ex. 1 [DE-20-1] at 5. It appears from the order entered by the presiding immigration judge that during the hearing Defendant admitted the allegations contained in the NTA subjecting him to removal. Id. at 4-5.[1] On August 14, 2003, an immigration judge ordered Defendant removed from the United States. [DE-20-1] at 5. A warrant for removal was issued on August 19, 2003 and Defendant was thereafter removed from the United States. Id. at 6-7.
On April 19, 2018, a Grand Jury sitting in the Eastern District of North Carolina returned a true bill of indictment against Defendant alleging as follows:
On or about April 1, 2018, in the Eastern District of North Carolina, the defendant, JOSE DOLORES HERNANDEZ-AGUILAR, also known as "JOSE FIGUEROA-MENDEZ," an alien, was found in the United States after having previously been excluded, deported, and removed from the United States on August 19, 2003, at Laredo, Texas, and not having obtained the express consent of the Attorney General, or his successor, to reapply for admission thereto.
All in violation of Title 8, United States Code, Sections 1326(a) and (b)(2).
The indictment alleges further that
For purposes of Title 8, United States Code, Section 1326(b)(2), the defendant, JOSE DOLORES HERNANDEZ-AGUILAR, also known as "JOSE FIGUEROA-MENDEZ" was excluded, deported, and removed from the United States on August 19, 2003, at Laredo, Texas, after having been convicted of transporting undocumented aliens within the United States by means of a motor vehicle for private financial gain, an aggravated felony, on or about September 19, 2002, in the United States District Court for the Southern District of Texas.
[DE-1] at 1-2.
On September 27, 2018, Defendant filed the instant motion to dismiss the indictment [DE-20]. In support of his motion Defendant argues that the immigration court lacked subject matter jurisdiction to issue the 2003 deportation order and the government cannot now rely on Defendant's deportation to pursue the instant charge against him. Id. at 2-4. Defendant cites to Pereira v. Sessions , --- U.S. ----, 138 S.Ct. 2105, 201 L.Ed.2d 433 (2018) for the proposition that because Defendant's 2003 NTA failed to include the date and time of Defendant's removal hearing as required by 8 U.S.C. § 1229(a), the immigration court lacked jurisdiction. Id. at 2-3. According to Defendant, dismissal of the indictment is warranted pursuant to both 8 U.S.C. § 1326(d) (limitation on collateral attack on underlying deportation order) and due process. Id. at 4.
*336 II. STANDARD OF REVIEW
Defendant requests that the court dismiss his indictment under 8 U.S.C. §§ 1326(a) and (b). In order to collaterally attack a deportation order in that context, a defendant must first meet the requirements of § 1326(d). The defendant must show that he exhausted any administrative remedies, he was deprived of the opportunity for judicial review, and the entry of the deportation order was fundamentally unfair. 8 U.S.C. § 1326(d) ; United States v. Chavez , No. 2:17-CR-40106-01-HLT, 2018 WL 6079513, at *4 (D. Kan. Nov. 21, 2018) ("the starting point for analyzing Defendant's challenge to [his §§ 1326(a) and (b) indictment] must be § 1326(d)'s three requirements for a collateral attack"). If the defendant is able to meet those requirements, he may contend that the deportation order was entered by a court lacking subject matter jurisdiction. See United States v. Zapata-Cortinas , No. SA-18-CR-343-OLG, 351 F.Supp.3d 1006, 1019-20, 2018 WL 6061076, at *8 (W.D. Tex. Nov. 20, 2018) (holding that jurisdictional challenges are no different from other collateral attacks to a deportation order, and a defendant wishing to challenge subject matter jurisdiction must meet the requirements of § 1326(d) ). If jurisdiction did not vest in the immigration court that issued the deportation order, a subsequent indictment charge of illegally re-entering the United States relying on the removal order may be subject to dismissal. See United States v. Virgen-Ponce , 320 F.Supp.3d 1164, 1166 (E. D. Wash. 2018) (relying on Pereira , 138 S. Ct. 2105 (2018) ); Wilson v. Carr , 41 F.2d 704, 706 (9th Cir. 1930) ("[I]f the [deportation] order is void on its face for want of jurisdiction, it is the duty of this and every other court to disregard it."); United States v. Pedroza-Rocha , No. EP-18-CR-1286-DB, 2018 WL 6629649, at *4 (W.D. Tex. Sept. 21, 2018) (holding that when an undocumented immigrant's case rests on an invalid deportation, it must be dismissed). A motion to dismiss may also challenge the failure to allege a necessary element of the offense. See Fed. R. Crim. P. 12(b)(3)(B)(v) (failure to state an offense). A defendant's prior removal or deportation from the United States is an essential element of the offense of illegal reentry in violation of 8 U.S.C. § 1326. United States v. Moreno-Tapia , 848 F.3d 162, 165 (4th Cir. 2017) (citing United States v. El Shami , 434 F.3d 659, 663 (4th Cir. 2005) ).
In Pereira , the Supreme Court considered whether "notices to appear" in deportation proceedings that do not specify the time and place of removal proceedings against an alien qualify as "notices to appear" under 8 U.S.C. § 1229(a)(1) for purposes of the "stop-time rule" under 8 U.S.C. § 1229b(d).[2] 138 S.Ct. at 2114. The Court held that such notices to appear are not true "notices to appear" as defined by § 1229(a)(1). Pereira , 138 S.Ct. at 2113-14. The Court's holding rested primarily on the plain text of § 1229(a)(1), which requires that a "notice to appear" be given to noncitizens facing removal proceedings, and defines a "notice to appear" as "written notice" specifying certain information, including the "time and place at which the proceedings will be held." Id. The Court noted that "common sense compels the conclusion" that if the "three words 'notice to appear' mean anything ... they must *337 mean that, at a minimum, the Government has to provide noncitizens 'notice' of the information, i.e., the 'time' and 'place,' that would enable them 'to appear' at the removal hearing." Id. at 2115. In the present case, the parties dispute how Pereira applies in contexts beyond application of the stop-time rule, namely in illegal reentry prosecutions where the underlying notice to appear provided to the alien and filed with the immigration court fails to specify the time and date of the removal proceedings.
III. DISCUSSION
Defendant advances two arguments in support of his motion to dismiss the indictment. First, he argues the indictment should be dismissed because subject matter jurisdiction did not vest in the immigration court. Second, he contends the indictment should be dismissed under the factors set forth for a collateral attack on a deportation order in 8 U.S.C. § 1326(d).
A. Subject Matter Jurisdiction of the Immigration Court over Removal Proceedings.
Defendant contends that a removal proceeding commences, and jurisdiction vests with the immigration court, only upon the filing of a charging document such as a notice to appear, which Pereira and § 1229(a) establish must contain the time and place of the removal proceedings. Def.'s Mem. [DE-20] at 2-3. Defendant argues further that where an NTA fails to include notification of the time and place of a removal hearing, the document does not qualify as a charging document so as to confer jurisdiction over an alien[3] to the immigration court, rendering any subsequent deportation ultra vires and void. Id.
While Defendant's argument appears to find support in other courts, within this circuit it has been held that neither Pereira nor 8 U.S.C. § 1229(a) controls when and how subject matter jurisdiction over a removal proceeding vests in an immigration court. United States v. Saravia-Chavez , No. 3:18-CR-00016, 349 F.Supp.3d 526, 531-32, 2018 WL 5974302, at *3 (W.D. Va. Nov. 14, 2018) ; United States v. Torres-Medina , No. 5:17-CR-281-H, 2018 WL 6345350, at *4 (E.D.N.C. Dec. 4, 2018) (citing Saravia-Chavez , 349 F.Supp.3d at 533-34, 2018 WL 5974302, at *4 & United States v. Cortez , No. 6:18-cr-22, 2018 WL 6004689, at *3 (W.D. Va. Nov. 15, 2018) ); United States v. Ramirez , No. 3:18-cr-00026, 2018 WL 6037540, at *3 (W.D. Va. Nov. 16, 2018) ; but see Virgen-Ponce , 320 F.Supp.3d at 1166 ; Zapata-Cortinas , 351 F.Supp.3d at 1017-19, 2018 WL 6061076, at *7 ; Pedroza-Rocha , 2018 WL 6629649, at *2-4. Rather, separate federal regulations promulgated by the Attorney General dictate when and how an immigration court gains subject matter jurisdiction. Saravia-Chavez , 349 F.Supp.3d at 532, 2018 WL 5974302, at *3 n.3 (citing statutory delegation of 8 U.S.C. § 1103(g)(2) ). Specifically, 8 C.F.R. § 1003.14(a) provides that "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service." For all proceedings "initiated after April 1, 1997," a "charging document" is defined by a separate regulation to "include a Notice to Appear." 8 C.F.R. § 1003.13. Yet another regulation- 8 C.F.R. § 1003.15(b) - (c) -lists the specific items that must be included in a notice to appear filed with the immigration court for jurisdictional purposes, but the time and place of the removal *338 proceedings is not among the listed criteria.[4] Notably, neither § 1003.15(b) nor § 1003.15(c) cross-references 8 U.S.C. § 1229(a)(1).
By contrast to these regulations concerning the required content of notices to appear filed with the immigration court for jurisdictional purposes, Pereira and 8 U.S.C. § 1229(a)(1) concern the required content of notices to appear "given ... to the alien" either in person, by mail, or by delivery to the alien's counsel. Section 1229(a)(1)(A)-(G) lists ten items that must be specified in notices to appear given to the alien, including "[t]he time and place at which the proceedings will be held." 8 U.S.C. § 1229(a)(1)(G)(I). Neither § 1229(a)(1) nor Pereira addresses the immigration court's subject matter jurisdiction over the proceeding.
The Court finds that 8 C.F.R. § 1003.14 and § 1003.15 -not 8 U.S.C. § 1229(a)(1) and Pereira's interpretation of that statutory provision-control when and how subject matter jurisdiction vests in an immigration court. Fourth Circuit case law appears to supports this conclusion, as well as the limited nature of the holding in Pereira. See, e.g., Sorcia v. Holder , 643 F.3d 117, 119 n.1 (4th Cir. 2011) (citing § 1003.14(a) for the proposition that jurisdiction vests upon filing of notice to appear with the immigration court); see also United States v. Perez-Arellano , No. 18-4301, 756 Fed.Appx. 291, 294, 2018 WL 6617703, at *3 (4th Cir. Dec. 17, 2018) ("Simply put, Pereira did not address the question of an immigration judge's jurisdiction to rule on an alien's removability, ..."); Leonard v. Whitaker , 746 Fed. Appx. 269, 270 (4th Cir. 2018) (noting the limited holding of Pereira and citing Benitez v. Sessions , 908 F.3d 144, 148 n.1 (5th Cir. 2018) (stating that [ ] Pereira does not apply where the "stop-time rule" applicable to cancellation of removal is not involved) ); Shogunle v. Holder , 336 Fed. Appx. 322, 324-25 (4th Cir. 2009) (holding jurisdiction never vested in immigration court because no notice to appear had been filed with the court per § 1003.14(a) ). Here, Defendant makes no *339 argument that the notice to appear filed with the immigration court is deficient under 8 C.F.R. § 1003.15. Accordingly, the Court declines to recommend dismissal of the indictment on jurisdictional grounds.
B. Defendant may not collaterally attack his deportation order.
Defendant has been indicted under 8 U.S.C. §§ 1326(a) and (b)(2). Section 1326(d) provides in relevant part:
In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) or subsection (b) unless the alien demonstrates that-
(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
(2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
(3) the entry of the order was fundamentally unfair.
8 U.S.C. § 1326(d). If a "defendant satisfies all three requirements, the illegal reentry charge must be dismissed as a matter of law." El Shami , 434 F.3d at 663. To show that the entry of the order was fundamentally unfair, the defendant must establish that "(1) his due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." United States v. Wilson , 316 F.3d 506, 510 (4th Cir. 2003) (abrogated on other grounds by Lopezv. Gonzales , 549 U.S. 47, 127 S.Ct. 625, 166 L.Ed.2d 462 (2006) ).
Although Defendant cites § 1326(d) in his memorandum, he does not set forth any argument that he has exhausted his administrative remedies, that the deportation proceeding improperly deprived him of the opportunity for judicial review, or that he suffered prejudice as a result of the defects in the NTA.[5] Def.'s Mem. [DE-20] at 4. Rather, Defendant argues only that he was denied due process, which is one part of § 1326(d)(3). Id. Accordingly, Defendant's motion should be denied on his failure to meet his burden under §§ 1326(d)(1) and (2). See United States v. Lara-Martinez , No. H-18-647, 2018 WL 6590798, at *2 (S.D. Tex. Dec. 14, 2018) ("Defendant [ ] can challenge the [ ] removal order in this case only if he satisfies the requirements of § 1326(d)" irrespective of whether Pereira applies to NTAs for purposes other than the stop-time rule or the validity of the underlying removal order).
Defendant argues that he was denied due process and the proceeding was fundamentally unfair because the immigration court lacked jurisdiction. Def.'s Mem. [DE-20] at 4. However, jurisdiction and fundamental unfairness are separate inquiries. See Zapata-Cortinas , 351 F.Supp.3d at 1019-20, 2018 WL 6061076, at *8. The Supreme Court held in Mendoza-Lopez that §§ 1326(a) and (b) do not require a lawful underlying deportation; a person may be convicted under § 1326 even if the predicate deportation was improper. 481 U.S. at 834-35, 107 S.Ct. 2148. Additionally, the mere existence of § 1326(d) indicates that §§ 1326(a) and (b)
*340 convictions may be obtained even if the underlying deportation order is void because § 1326(d) limits collateral attacks on deportation orders and provides that a defendant can only challenge the underlying order if he or she meets the enumerated requirements. See Chavez , 2018 WL 6079513, at *4 (collecting cases holding that "a defective notice of hearing alone does not satisfy-or obviate the need to satisfy- § 1326(d)'s three requirements for collateral attack of a removal order."); Zapata-Cortinas , 351 F.Supp.3d at 1019, 2018 WL 6061076 at *8 ("By enumerating the specific requirements that must be satisfied in order for a defendant to collaterally attack a prior removal order, § 1326(d) necessarily contemplates that flawed or invalid removal proceedings may still serve as the basis of a 'prior removal' in a § 1326(a) prosecution if the requirements are not met."). Even if the deportation order is void for lack of jurisdiction, Defendant still must show that entry of the order was fundamentally unfair.
In the context of a removal hearing,
[D]ue process 'is the opportunity to be heard at a meaningful time and in a meaningful manner. More specifically,... due process requires an alien who faces [removal] be provided (1) notice of the charges against him, (2) a hearing before an executive or administrative tribunal, and (3) a fair opportunity to be heard.
El Shami , 434 F.3d at 664-65 (quoting United States v. Torres , 383 F.3d 92, 104 (3d Cir. 2004) ). The danger of the defect in the NTA is that if a defendant is not informed of the date and time of the hearing, he may not be able to attend, and he would be removed in absentia. See, e.g., El Shami , 434 F.3d at 662. Such was the case in Pereira , 138 S.Ct. at 2112. Here, however, the defect in the NTA did not prevent Defendant from attending his hearing. Defendant was present; the NTA notified him of the charges against him, he had a hearing before an executive or administrative tribunal, and he had a fair opportunity to be heard. See Ramirez , 2018 WL 6037540 at *6 (holding that the defendant's presence at the hearing defeated his argument that the defective NTA rendered the proceedings fundamentally unfair).
Moreover, Defendant has not demonstrated that he was prejudiced by the NTA's flaw. To show prejudice, Defendant must establish that "but for the errors complained of, there was a reasonable probability that he would not have been deported." El Shami , 434 F.3d at 665. Because Defendant was present at the hearing despite the NTA's failure to include the date and time, the result of the hearing would not have been different had the NTA included the date and time. See Lara-Martinez , 2018 WL 6590798, at *3 ("There is nothing in the record to indicate that if the Notice to Appear had included the date and time of the removal proceeding - a proceeding at which Defendant was present - the proceeding would not have resulted in Defendant's removal."). Defendant has not demonstrated how he suffered prejudice, so the flawed NTA did not render the proceedings fundamentally unfair.
In summary, even if the underlying deportation order was unlawful for lack of jurisdiction, it may nonetheless support a § 1326 conviction because Defendant has failed to meet the three requirements of § 1326(d). See Mendoza-Lopez , 481 U.S. at 834-35, 107 S.Ct. 2148. Defendant must show that he exhausted any administrative remedies, the proceedings deprived him of the opportunity for judicial review, and the entry of the order was fundamentally unfair. Defendant has only argued that he was denied due process, and the court is *341 unpersuaded because Defendant was present at his hearing. Therefore, § 1326(d) does not permit Defendant to collaterally attack the unlawful deportation order. Accordingly, it is recommended that Defendant's motion to dismiss the indictment be denied.
IV. CONCLUSION
For the reasons stated herein, it is RECOMMENDED that the Defendant's motion to dismiss the indictment [DE-20] be DENIED.
IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on Plaintiff. You shall have until January 23, 2019 , to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. See, e.g. , 28 U.S.C. § 636(b)(1) ; Fed. R. Civ. P. 72(b)(3) ; Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.
If you do not file written objections to the Memorandum and Recommendation by the foregoing deadline, you will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, your failure to file written objections by the foregoing deadline will bar you from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. See Wright v. Collins , 766 F.2d 841, 846-47 (4th Cir. 1985).

Although neither party has indicated whether Defendant waived any appeal of the removal determination, on the face of the removal order where "Appeal: Reserved/Waived A/I/B" is indicated, "Reserved" has been stricken. [DE-20-1] at 5.

Pursuant to 8 U.S.C. § 1229b(d), the Attorney General can cancel removal of non-permanent residents who have at least ten years of continuous presence in the United States and permanent residents who have at least seven years of continuous presence in the United States. Under the "stop-time" rule, these periods end when the Government serves a "notice to appear" as defined by § 1229(a)(1). See Pereira , 138 S.Ct. at 2110. However, neither party contends the stop time rule applies in this case.

In its discussion the Court uses the terms "alien" and "noncitizen" interchangeably consistent with cases cited.

In accordance with 8 C.F.R. § 1003.15(b) -(c) :
(b) The Order to Show Cause and Notice to Appear must also include the following information:
(1) The nature of the proceedings against the alien;
(2) The legal authority under which the proceedings are conducted;
(3) The acts or conduct alleged to be in violation of law;
(4) The charges against the alien and the statutory provisions alleged to have been violated;
(5) Notice that the alien may be represented, at no cost to the government, by counsel or other representative authorized to appear pursuant to 8 CFR 1292.1 ;
(6) The address of the Immigration Court where the Service will file the Order to Show Cause and Notice to Appear; and
(7) A statement that the alien must advise the Immigration Court having administrative control over the Record of Proceeding of his or her current address and telephone number and a statement that failure to provide such information may result in an in absentia hearing in accordance with § 1003.26.
(c) Contents of the Notice to Appear for removal proceedings. In the Notice to Appear for removal proceedings, the
Service shall provide the following administrative information to the Immigration Court. Failure to provide any of these items shall not be construed as affording the alien any substantive or procedural rights.
(1) The alien's names and any known aliases;
(2) The alien's address;
(3) The alien's registration number, with any lead alien registration number with which the alien is associated;
(4) The alien's alleged nationality and citizenship; and
(5) The language that the alien understands.

Defendant states that § 1326(d)(1) does not apply here because the underlying deportation order was void for lack of jurisdiction. However, the Supreme Court held in United States v. Mendoza-Lopez that a § 1326(a) conviction does not require a lawful underlying deportation. 481 U.S. 828, 834-35, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987). Therefore, even if the predicate deportation order were unlawful for want of jurisdiction, Defendant could still be convicted under §§ 1326(a) and (b). Defendant must meet all three requirements of § 1326(d) to challenge his §§ 1326(a) and (b) indictment.